UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| KENNETH THOMAS, | ) | No. CV 11-08909-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1.   Whether the Administrative Law Judge ("ALJ") properly

considered all of Plaintiff's severe impairments;

2. Whether the ALJ properly considered the findings from the psychological consultative examiner;

3. Whether the ALJ provided a complete and proper assessment of Plaintiff's residual functional capacity;

4. Whether the ALJ posed a complete hypothetical question to the vocational expert;

5. Whether there is a Dictionary of Occupational Titles ("DOT") inconsistency in the ALJ's holding that the Plaintiff can perform the jobs [identified at Step Five] such as general laborer, cleaner, and machine feeder;

6. Whether the ALJ properly developed the record regarding Plaintiff's treating source records;

7. Whether the ALJ properly considered the lay witness testimony;

8. Whether the ALJ properly considered Plaintiff's testimony and made proper credibility findings.

(JS at 2-3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.  After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ PROPERLY CONSIDERED ALL OF PLAINTIFF'S SEVERE IMPAIRMENTS**

In his first issue, Plaintiff asserts that the ALJ erred in determining his severe impairments by omitting right arm paralysis and right eye blindness. (JS at 4, AR 18.)  Plaintiff argues in a somewhat

conclusory fashion that both right arm paralysis and blindness in the right eye "would cause some serious functional problem as well as limit the abilities and aptitudes that are necessary to engage in basic work activities." (JS at 4.)

Plaintiff makes numerous citations to the record (see JS at 5) but none of these citations indicate any functional limitations due to these two assertedly severe impairments.

By definition, a severe impairment must have at least some minimal effect on a person's ability to do basic work activities. Symptoms alone do not establish the existence of a severe impairment. Ukolov v. Barnhart, 420 F.3d 1002, 1005 (9th Cir. 1995). With regard to Plaintiff's assertion that he has a paralyzed right arm, his counsel provides numerous citations to the record (See JS at 4), which the Court has reviewed; however, they do not substantiate counsel's assertion. These appear to be mostly prison records. In one document entitled "Client Evaluation," from August 25, 2008, the physician reported that "Mr. Thomas reports a history of numerous gun shot wounds to his right arm and his back. He reports feeling numbness in his right arm periodically." (AR 182.) Similarly, in a document entitled "Initial Health Screening" from May 21, 2007, which again appears to be a California Department of Corrections form, Plaintiff indicated he had no physical deformity or disability. (AR 159.) In sum, the Court finds nothing in the record documenting right arm paralysis.

Plaintiff had vision testing in September 2006 which indicated that he had visual acuity of 20/25 in his left eye, and 20/25 when using both eyes combined. (AR 44, 271.) In Plaintiff's right eye, testing indicated that he had uncorrected vision of 20/200. Pursuant

1   to Social Security Regulations, statutory blindness is met if there is
2   visual acuity of 20/200 or worse with use of corrective lenses.  see
3   20 C.F.R., Part 404, Subpart P, App. 1 Section 2.00(A)(5)(b).  Visual
4   acuity testing indicated that Plaintiff does not own any prescription
5   glasses. (AR 271.)  It is reasonable to infer that Plaintiff's vision
6   might have been improved with corrective lenses.  Even if this would
7   not be the case, however, the evidence in the record, which the Court
8   has summarized, sufficiently indicates that although Plaintiff may
9   have had certain symptoms, the lack of any indication that these
10  symptoms contribute to a functional impairment which would affect his
11  ability to work is sufficient to substantiate the ALJ's determination
12  of Plaintiff's severe impairments, which exclude right eye blindness
13  and right arm paralysis.

14

15                                **II**

16      **THE ALJ PROPERLY CONSIDERED THE FINDINGS OF DR. GAYLE,**

17          **THE PSYCHOLOGICAL CONSULTATIVE EXAMINER**

18      Plaintiff received a consultative psychological evaluation ("CE")
19  on May 13, 2009 from Dr. Gayle. (AR 207-213.)  Plaintiff correctly
20  notes that the ALJ gave great weight to the functional assessment
21  provided by the psychological CE.  As noted by the ALJ, this
22  examination found that Plaintiff was able to understand, remember and
23  implement simple three-part tasks.  During the examination, Plaintiff
24  reported difficulty relating with others and the examiner thus
25  restricted him to a work setting with limited contact with the public
26  and co-workers.  The ALJ found this assessment was entitled to
27  significant weight because it was based on objective examination
28  findings and consistent with the record as a whole. (AR 21.)

                                4

1    The residual functional capacity ("RFC") determined by the ALJ
2  provides, in part, that Plaintiff can do work that is limited to the
3  performance of simple, routine and repetitive tasks in a job that does
4  not require more than occasional interaction with the public. (AR 19.)
5  Plaintiff's complaint as articulated in his second issue is that the
6  ALJ did not properly account for Dr. Gayle's finding that Plaintiff
7  can perform a simple, three-part task.

8    Plaintiff's argument fails because the ALJ properly translated
9  Dr. Gayle's restriction to simple, three-part tasks to a limitation
10 for simple, repetitive tasks. (AR 19, 21, 212.)  This is within the
11 purview and jurisdiction of the ALJ.  See Stubbs-Danielson v. Astrue,
12 539 F.3d 1169, 1173-74 (9th Cir. 2008).  The ALJ also gave significant
13 credence to the opinion of the State Agency psychiatrist who had
14 reviewed Dr. Gayle's report, and concluded thereon that Plaintiff
15 could perform simple, repetitive tasks. (AR 21, 229-231.)
16 Consequently, the ALJ's translation of the three-part instruction into
17 a limitation for simple repetitive tasks was supported by the evidence
18 in the record.

19    In any event, even if the ALJ did commit error in the translation
20 process, it would have to be found harmless.  This is because the
21 testimony of the vocational expert ("VE") identified various jobs,
22 such as machine feeder and general laborer, which require only a
23 reasoning level of one, which is defined in the DOT as "apply common
24 sense understanding to carry out simple one or two step instructions."
25 Consequently, even if the ALJ had specifically articulated an RFC
26 which incorporated restriction to simple three-step tasks, Plaintiff
27 would clearly have been found capable of performing the simple one or
28 two step instructions required by various of the jobs identified by

the VE, and adopted by the ALJ at Step Five. (See AR at 22-23.)  For this reason, the Court finds no error with regard to the second issue.

Issue no. 3 is simply a restatement of the first and second issues, which have already been discussed by the Court, and merit no further attention.

Similarly, Plaintiff's fourth issue, which asserts that the ALJ failed to pose a complete hypothetical question to the VE, does not merit further discussion, because it simply incorporates Plaintiff's first two issues in the context of asserting that the hypothetical questions posed to the VE (see AR at 56-58) do not incorporate Dr. Gayle's opinion that Plaintiff could understand, remember and implement only a three-part task, and failed to incorporate blindness in Plaintiff's right eye and right arm paralysis.  Since these issues have already been discussed and determined, no further discussion is necessary.

In the fifth issue, Plaintiff argues that there is an unexplained DOT inconsistency in the ALJ's finding that Plaintiff can perform jobs such as general laborer, cleaner, and machine feeder.  In the JS, Plaintiff discusses each of these jobs, focusing on the ALJ's RFC determination that Plaintiff is limited to simple, routine, and repetitive tasks as well as only occasional interaction with the public. (See AR at 19.)  Plaintiff notes that the RFC does not include anything regarding limitations on his interaction with co-workers, nor anything regarding his assertedly paralyzed right arm or his right eye blindness. (JS at 18-19.)  With regard to these latter items, as the Court has noted, they have been fully discussed and determined in conjunction with the issues raised by Plaintiff that pertain to them. But, some further discussion is called for with regard to whether or

not there is any inconsistency between the requirements set out in the DOT for the particular jobs identified at Step Five, and Plaintiff's exertional and non-exertional limitations.

With regard to the identified occupation of general laborer, Plaintiff argues that the ALJ did not account for arm restrictions or his right eye impairment.  Again, however, Plaintiff engages in a conclusory analysis, failing to specifically identify what particular limitations Plaintiff has that would prevent him from doing this work. It is Plaintiff's own conclusion, not that set out in the DOT, that "the job of a general laborer would require Plaintiff to see clearly out of both eyes as well as the ability to use both hands and arms to lift and transport rolls and fabrics throughout the factory." (JS at 19.)

With regard to the ALJ's limitation of no more than occasional interaction with the public, Plaintiff asserts that he could not perform work as a general laborer because that job requires frequent interaction with co-workers, and provides various examples of what he believes are requirements of this job that would exceed his abilities. ("For example, the general laborer job would require [Plaintiff] to notify the operator of processing defects, which would require [Plaintiff} to interact frequently with co-workers ..." [JS at 19.]) Again, however, Plaintiff's examples, intended to illustrate his conception of job requirements, are not supported by the DOT job descriptions and requirements.

Plaintiff argues that he could not work as a cleaner or machine feeder, which are the second and third jobs identified by the ALJ as being within Plaintiff's functional abilities.  Plaintiff's arguments are again supported by his contention that his right arm paralysis and

1   right eye blindness would prevent him from performing these jobs;
2   however, the Court has already concluded that the ALJ properly found
3   that Plaintiff does not have these severe impairments.   Further,
4   Plaintiff's argument that the machine feeder job requires more than
5   limited interaction with co-workers is not supported by the DOT
6   description, and therefore, Plaintiff's argument fails in this regard.

7

8                              **III**
9          **THE ALJ DID NOT FAIL TO PROPERLY DEVELOP THE RECORD**

10         Plaintiff contends that the ALJ failed in his duty to properly
11  develop the record by not obtaining treatment records from medical
12  visits that Plaintiff supposedly made after May 2009.   Plaintiff notes
13  that he was released from a prison term approximately one month prior
14  to his hearing, and "it should have been determined whether he was
15  still receiving any sort of medical treatment during this time, and
16  the records should have been obtained." (JS at 26.)   But again,
17  Plaintiff's argument is conclusory and largely speculative.   The
18  evidence in the record is not ambiguous with regard to either physical
19  disability or any possible mental disability.   See Mayes v. Massanari,
20  276 F.3d 453, 459 (9th Cir. 2001).   Other than arguing hornbook law
21  regarding development of the record in Social Security cases,
22  Plaintiff bypasses that part of the law which clearly requires him to
23  provide some evidence that there at least exists other relevant
24  medical records which should be obtained in order to evaluate his
25  disability claim.   Instead of doing this, Plaintiff transforms the
26  ALJ's duty into determining whether such records may exist.   This
27  would create an unduly burdensome obligation, in that additional
28  medical records for a claimant may always possibly exist.   The

relevant question is whether there is any reason to believe they do
exist, and it that is the case, whether they would likely be relevant
to the disability claim.   In any event, the Commissioner correctly
argues here that there was sufficient medical evidence in the record
for the   ALJ to make a determination both as to physical and mental
disabilities.   Consequently, Plaintiff's argument will not prevail.

**IV**

**THE ALJ PROPERLY CONSIDERED LAY WITNESS TESTIMONY**

Plaintiff notes that a Third Party Function Report was completed
by Jacqueline Sanders on February 24, 2009.   Plaintiff notes that Ms.
Sanders provided extensive information regarding both physical and
mental limitations, but the ALJ, while reiterating these statements,
did not indicate whether he accepted or rejected them. (JS at 30.)

Plaintiff's argument here must fail because where Ms. Sanders
responded to questions, they did not provide any amplification of
Plaintiff's own claims of being dysfunctional or disabled. (See AR at
108-123.)   Thus, the testimony was merely duplicative of that provided
by Plaintiff, and the ALJ's failure to provide reasons for rejecting
this testimony must be considered harmless error, since it would not
have changed the outcome of the decision.   See Molina v. Astrue, 674
F.3d 1104, 1117 (9th Cir. 2012.)

**V**

**THE ALJ PROPERLY CONSIDERED PLAINTIFF'S TESTIMONY**

In his decision, the ALJ found that Plaintiff's testimony as to
his symptoms was not credible to the extent it was inconsistent with
the RFC determined by the ALJ. (AR 20.)   Plaintiff contends that the

ALJ's decision falls afoul of settled law developed in Ninth Circuit cases which requires that credibility findings must be supported by the record and be sufficient enough to demonstrate that the claimant's subjective testimony was not arbitrarily discredited.  In this case, the ALJ did provide a number of sufficiently specific and legitimate findings to support the credibility determination.  These included noting that Plaintiff put forth a poor effort during his psychological evaluation. (AR 20, 208, 211.)  The ALJ also noted that Plaintiff continued using illegal drugs and was non-compliant with prescribed medications.  This is an accepted grounds for credibility determination.  See Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).  Plaintiff had reported continued use of cocaine as recently as a year before the hearing on September 2, 2010. (AR 49.)  Similarly, the record documents Plaintiff's failure to take prescribed medications. (AR 192, 193.)  There are also indications that when Plaintiff was compliant with his medications, he showed significant improvement. (AR 186-187, 190-191.)  Finally, the ALJ noted inconsistent statements Plaintiff made in his application. (AR 21.) These included discrepancies between his statements made to Dr. Gayle and statements made in his Adult Function Report. (AR 21, 108-115, 209.)  Again, these were appropriate factors to be utilized in a credibility determination.  See Bunnell, 947 F.2d at 346.

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**


DATED: August 21, 2012                          /s/
                                VICTOR B. KENTON
                                UNITED STATES MAGISTRATE JUDGE

10